**IN RE: BRUCE EDWARD BABBITT**
(Babbitt Fee Application).

Division No. 98–1.

United States Court of Appeals,
District of Columbia Circuit.

Filed May 21, 2002.

Before: SENTELLE, Presiding, FAY and CUDAHY, Senior Circuit Judges.

Opinion of the Special Court filed by Circuit Judge SENTELLE.

Opinion concurring in part and dissenting in part filed by Senior Circuit Judge CUDAHY.

PER CURIAM

## ORDER

This matter coming to be heard and being heard before the Special Division of the Court upon the application of Bruce Edward Babbitt for reimbursement of attorneys' fees and costs pursuant to section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (1994), and it appearing to the court that the application is allowable only to the extent reflected in the opinion issued contemporaneously herewith, it is hereby

**ORDERED, ADJUDGED,** and **DE-CREED** that the United States reimburse Bruce Edward Babbitt for attorneys' fees and expenses he incurred during the investigation by Independent Counsel Carol Bruce in the amount of $52,091.94 this 21st day of May, 2002.

## ON APPLICATION FOR ATTORNEYS' FEES

SENTELLE, Circuit Judge:

Bruce Edward Babbitt petitions this court under Section 593(f) of the Ethics in

Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (1994) (the "Act"), for reimbursement of attorneys' fees in the amount of $206,265.16 that he incurred during and as a result of the investigation conducted by Independent Counsel ("IC" or "OIC") Carol Elder Bruce. Because we conclude that with one relatively minor exception Babbitt has not carried his burden of showing that the fees would not have been incurred but for the requirements of the Act we deny the petition in large part while allowing recovery as to one element.

## BACKGROUND

In 1993 a joint venture consisting of three Indian tribes and the owner of a dog track in Hudson, Wisconsin, applied to the U.S. Department of the Interior ("DOI") requesting permission to take the dog track into trust in order to establish a casino on the property, as permitted under certain conditions by federal law. *See* 25 U.S.C. § 2701 *et. seq.* The joint venture hired as a lobbyist Paul Eckstein, a friend and former law partner of the Secretary of the Interior, Bruce Edward Babbitt. On July 14, 1995, with denial of the application by the DOI imminent, Eckstein met alone with Babbitt in Babbitt's office seeking to delay the denial until Babbitt could meet with the leaders of the joint venture. The DOI nevertheless issued the denial later that same day. Eckstein subsequently testified in a civil suit challenging the Hudson application decision that when he requested the delay, Babbitt informed him that Harold Ickes, the White House Chief of Staff, had called and directed that Babbitt make a decision concerning the casino request that day.

Eckstein also alleged that during their meeting Babbitt informed him that certain Indian tribes opposed to the casino had contributed a substantial amount of money to the Democratic National Committee or other Democratic interests. About this same time there were allegations that the DOI's decision to deny the casino application was influenced by the donations made to the Democrats by the opposing tribes.

Eckstein's statements about his conversation with Babbitt were thereafter reported in the press. Two congressional committees, the Senate Governmental Affairs Committee and the House Committee on Government Reform and Oversight, then conducted investigations into the matter. Upon questioning of Babbitt by committee members of his conversation with Eckstein, Babbitt responded that he had never discussed the casino matter with Ickes and he disputed Eckstein's assertion that he told Eckstein that Ickes had instructed him to issue the decision that day. He further stated that he may have told Eckstein that Ickes wanted or expected the DOI to decide the matter promptly but that if he said this it was only an effort to terminate the meeting.

Thereafter, the Attorney General (hereinafter referred to as "AG" or "DOJ"), pursuant to section 592(a) of the Act, conducted a preliminary investigation to determine whether further investigation was warranted into whether Babbitt made false material statements in his responses to the congressional inquiries. On February 11, 1998, at the conclusion of the preliminary investigation, the AG, having determined that further investigation was warranted, submitted her application to us for the appointment of an independent counsel to look into the matter (hereinafter referred to as "Application"). The AG recommended that the independent counsel's prosecutorial jurisdiction include not only federal perjury and false statements violations by Babbitt but also, to the extent necessary to resolve these issues, the DOI's casino decision itself.

On March 19, 1998, we appointed Carol Elder Bruce as independent counsel to further investigate the allegations. After an investigation lasting 21 months that included numerous interviews, extensive document review, and substantial grand jury activity, IC Bruce concluded her investigation without bringing criminal charges against any person. Pursuant to the statute, the IC submitted a final report to this court on January 3, 2000. *See* 28 U.S.C. § 594(h)(1)(B). We ordered the report made public by order of August 22, 2000.

Babbitt, pursuant to section 593(f)(1) of the Act, has petitioned this court for reimbursement of the attorneys' fees he incurred during the IC's investigation. As directed by section 593(f)(2) of the Act, we forwarded copies of Babbitt's fee petition to the Attorney General and the IC and requested written evaluations of the petition. The court expresses its appreciation to the IC and the Attorney General for submitting these evaluations, which we have given due consideration in arriving at the decision announced herein.

### ANALYSIS

■ The Independent Counsel statute provides:

> Upon the request of an individual who is the subject of an investigation conducted by an independent counsel pursuant to this chapter, the division of the court may, if no indictment is brought against such individual pursuant to that investigation, award reimbursement for those reasonable attorneys' fees incurred by that individual during that investigation which would not have been incurred but for the requirements of this chapter.

28 U.S.C. § 593(f)(1). Accordingly, in order to obtain an attorneys' fees award under the statute, a petitioner must show

that all of the following requirements are met:

1) the petitioner is a "subject" of the investigation;

2) the fees were incurred "during" the investigation;

3) the fees would not have been incurred "but for" the requirements of the Act; and

4) the fees are "reasonable."

*See In re North (Dutton Fee Application),* 11 F.3d 1075, 1077–82 (D.C.Cir., Spec. Div., 1993) (per curiam). Because we find that Babbitt fails to satisfy the third requirement, known as the "but for" test, we need not address the remaining requirements.

\* \* \* \* \* \* \* \* \* \*

■ We have previously established that "[a]ll requests for attorneys' fees under the Act must satisfy the 'but for' requirement." *In re Sealed Case,* 890 F.2d 451, 452 (D.C.Cir., Spec. Div., 1989) (per curiam). And we have repeatedly held that "[t]he most difficult element for a fee applicant to establish under the Act is that the fees 'would not have been incurred but for the requirements of [the Act].'" *In re North (Bush Fee Application),* 59 F.3d 184, 188 (D.C.Cir., Spec. Div., 1995) (per curiam) (quoting *Dutton,* 11 F.3d at 1079). In order to establish eligibility for an award, the fee applicant must show that the amounts claimed are only those fees and expenses above and beyond those he would have incurred as a result of an investigation by the DOJ. *In re Sealed Case,* 890 F.2d at 452–53. As we stated in *In re Pierce (Olivas Fee Application),* 178 F.3d 1350, 1355 (D.C.Cir., Spec. Div., 1999) (per curiam), "[i]f the investigative act generating the defensive costs would, in the absence of the Act, have been pursued by other authorities—'had the case been handled by the Department of Justice or

**390**

other executive authorities rather than the Independent Counsel'—then Congress did not contemplate the award of counsel fees. *In re North (Dutton Fee Application)*, 11 F.3d at 1080."

Babbitt argues that he satisfies the "but for" requirement under three distinct theories.

■ *Subjected to a more rigorous application of the criminal law.* First, Babbitt claims that the IC's investigation subjected him to a more rigorous application of the criminal law than he would have been subjected to in the absence of the Act because the IC's extensive investigation went far beyond the realm of any ordinary investigation of the same crimes. In support of this contention, Babbitt cites to section 592(a)(2)(B)(ii) of the Act which states that for the AG, after conducting a preliminary investigation, to determine that no further investigation is warranted because the person being investigated lacked the required state of mind for a violation, the evidence relied on to make this determination must be "clear and convincing." Babbitt argues that "[s]ince the potential crimes here under investigation, perjury and false statements, both require proof of criminal intent, section 592(a)(2)(B)(ii)—uniquely in this case—required prosecutive actions that demonstrably subjected Secretary Babbitt 'to a more rigorous application of the criminal law.'" Absent the constraints of section 592(a)(2)(B)(ii), Babbitt contends that "the Attorney General may very well have exercised her normal prosecutorial discretion to terminate the investigation" at a much earlier stage.

Babbitt further claims that he was subjected to a more extensive and rigorous investigation than an ordinary citizen would endure under similar circumstances because "[t]he OIC investigation ... extended well beyond the bounds of a typical investigation of a private individual into perjury or false statements charges based on similar facts." These "similar facts," he states, "mostly concerned a slight discrepancy in two men's recollection of a brief, hurried one-on-one conversation that took place more than two years before either man testified about it." Therefore, according to Babbitt, the IC's investigation was more extensive and rigorous than would ordinarily have occurred because in addition to the conversation between Babbitt and Eckstein "—the sole basis of the Attorney General's application—the OIC also conducted an exhaustive investigation of the underlying decision-making process in the Hudson Casino, as reflected in the nearly 300 pages the OIC devoted to that issue in the Final Report."

While Babbitt acknowledges that this court gave the OIC jurisdiction to investigate the DOI's underlying decision in the Hudson case "[t]o the extent necessary to resolve the allegations that Secretary Babbitt made false statements concerning th[e] decision," Order Appointing Independent Counsel, March 19, 1998, he argues that "the OIC went well beyond what would have been undertaken by an ordinary prosecutor's office in a case involving an ordinary man." For authority, Babbitt relies on our decision in *In re Sealed Case*, where we found the "but for" requirement fulfilled as the fee applicant was subjected to a more rigorous application of the criminal law than is applied to other citizens because the IC was appointed to investigate the applicant's 1981, 1982, and/or 1984 tax returns but actually examined the applicant's tax returns for nine years, from 1976 to 1984. We noted that "the ordinary examination of a taxpayer for [the same] violation would have been substantially less probing." 890 F.2d at 453–54.

The issue here, however, is not what would have resulted if an "ordinary prosecutor's office" had investigated an "ordi-

nary man." As the IC points out, Babbitt cannot compare himself to an "ordinary citizen" because this case has "the unique circumstances of perjury allegations concerning a cabinet officer's testimony before a Senate committee about matters involving the financing of national contests." In *In re Nofziger*, 925 F.2d 428, 443 (D.C.Cir., Spec. Div., 1991) (per curiam), we observed that in order "[t]o determine whether the subject of an independent counsel investigation has been subjected to a more rigorous *application of the criminal law*, the court must compare the investigation of the subject of the independent counsel investigation with an investigation into possible violations of the same statute conducted *in the absence of the Independent Counsel Act.*" (emphasis in original). In this instance the investigation by the Independent Counsel must be compared with an investigation by the United States Department of Justice of Babbitt in his capacity not as an "ordinary man" but as Secretary of the Interior. *Cf. id.* ("[T]he comparison must be between the investigation of Nofziger, a former high-government official subject to the Act, for alleged violations of section 207(c) and the regular investigation of a similar, high-government official subject to section 207(c) who is not covered by the Independent Counsel Act."). We therefore agree with the IC that "in the face of allegations that a cabinet officer had committed perjury and made false statements to a U.S. Senate committee, the Justice Department would have conducted an investigation and Babbitt would have incurred substantially the attorney fees for which he now seeks reimbursement."

The IC makes the further argument that in this case "[t]he greater question was whether Babbitt and his staff were informed that Ickes and his staff sought a particular outcome or timing to the outcome of the Hudson Casino Application"

and that, considering the AG's identification for investigation of the Hudson Casino application and issues relating to campaign finance contributions, Babbitt would have been subjected to an investigation of the same rigor and scope by the Department of Justice as he was by the Independent Counsel. We note that the circumstances surrounding the independent counsel investigation of Babbitt are similar to those in the independent counsel investigation of U.S. Department of Housing and Urban Development ("HUD") Secretary Samuel R. Pierce, Jr. in the early 1990's. In that case, allegations of abuses, favoritism, and mismanagement at HUD under the tenure of Pierce led to the appointment of an independent counsel to investigate whether Pierce and other HUD officials may have conspired to defraud the United States or committed other federal crimes related to their duties at HUD. That independent counsel investigation also took a considerable amount of time and delved deep into the decision-making process at HUD. In denying all requests except one for attorneys' fees in that matter for failure to meet the "but for" requirement, we held that "[t]he convoluted nature of the corruption involved and the high profile identity of the suspects and defendants would no doubt have resulted in a complex and lengthy investigation with or without the appointment of an independent counsel." *In re Pierce (Kisner Fee Application)*, 178 F.3d 1356, 1361 (D.C.Cir., Spec. Div., 1999) (per curiam). So too here. The serious nature of the perjury and corruption allegations, the considerable number of witnesses involved in the casino application process, and the high profile identity of those involved would have resulted in an investigation of similar length and breadth if it had been undertaken by the Department of Justice in the absence of the Independent Counsel Act.

■] *The Act restricted the AG's preliminary investigation.* Babbitt next argues that the "but for" requirement is satisfied in this case because the Attorney General's preliminary investigation was hindered by the restrictive provisions of the Independent Counsel Act which prevented her from making conclusive credibility determinations and exercising her prosecutorial discretion to terminate the investigation. In support of this argument, Babbitt submits that in the AG's Application her "statements regarding the attenuated quality of the evidence on falsity, materiality, and criminal intent make clear that, absent ('but for') the requirements of the Independent Counsel Act restricting the Attorney General's ability to call witnesses, issue subpoenas, and make credibility determinations, she could and likely would have disposed of the case without seeking appointment of an independent counsel." In this regard, Babbitt compares his case to *In re Donovan*, 877 F.2d 982, 987–90 (D.C.Cir., Spec. Div., 1989), (per curiam) where we found the "but for" requirement satisfied because the alleged wrongdoing was based upon a single allegation by a single witness of extremely questionable credibility, and that if the AG had not been prohibited by the Act from convening grand juries, plea bargaining, and issuing subpoenas, then he would have been better able to evaluate the credibility of the witness and dispose of the case much sooner and at much lower cost. Likewise, Babbitt claims that he too "was subjected to an expensive and extensive investigation that, at its core, required a determination as to his credibility and state of mind that the Attorney General could have made had she been able to follow the Justice Department's usual process of calling witnesses and issuing subpoenas."

In response, the Independent Counsel argues that even if the AG was not limited by the Act in conducting her preliminary investigation, she would nevertheless have conducted an extensive investigation of this matter. Quoting from *In re Sealed Case*, 890 F.2d at 453, the IC notes that under the "but for" analysis, the question is whether any of the Act's restrictions "interfered with [the AG's] ability to conduct an adequate preliminary investigation" and, had the Attorney General not been so limited, whether the circumstances of this case are such that Babbitt "might have been subjected to a lesser investigation, or perhaps exonerated at this early stage." In arguing that Babbitt would have been subjected to a similar investigation by the DOJ, the IC cites to the AG's Application, which states in pertinent part:

> [B]ecause of the close connection between the potential perjury and the underlying casino decision, I recommend that the Independent Counsel's prosecutorial jurisdiction specifically include any potential criminal violations in connection with the underlying casino decision that may emerge during the course of the investigation of the potential perjury and false statement allegations, insofar as exploration of those matters is deemed necessary to resolve these allegations.

Application at 8–9. Because the AG specifically mentions the possible investigation of the "underlying casino decision," the IC argues that if DOJ had been free to investigate this matter to conclusion on its own then, in order to resolve the perjury allegation, it would have explored the facts surrounding the underlying casino application and the campaign contributions that some parties claimed had influenced the process. We agree.

In *Nofziger*, the independent counsel was appointed to investigate whether the fee applicant had engaged in illegal lobbying communications within the prohibited

one-year period after leaving his position at the White House. In denying the petitioner attorneys' fees because of his failure to satisfy the "but for" requirement, we noted that in the application to the court for appointment of independent counsel, the Acting Attorney General "did *not* complain that the limitations on his ability to investigate had 'hampered' or restricted his preliminary investigation." 925 F.2d at 439 (emphasis in original). In the case before us, the AG in her Application also made no such complaint. As previously noted, Babbitt claims that the AG in her Application made "statements regarding the attenuated quality of the evidence on falsity, materiality, and criminal intent." But although the AG stated in her Application that there was "evidence suggesting that Secretary Babbitt lacked criminal intent," she nevertheless stated on the issue of "falsity" that "[t]he investigation has determined that there is specific and credible evidence indicating that Secretary Babbitt may have testified falsely" about his conversation with Eckstein, and concerning the issue of "materiality," the AG stated that "[e]vidence that the Secretary of the Interior, on the day the [Hudson Casino decision] issued, made a statement suggesting that the White House Deputy Chief of Staff was dictating the decision's timing would appear to be capable of influencing the nature and extent of the [Senate Governmental Affairs Committee's] inquiry and findings." We consequently find, paraphrasing *Nofziger*, that there is nothing in the record or in the circumstances of Babbitt's alleged offenses that indicates that the Attorney General, if freed of the restrictions of the Act, would have subjected Babbitt to a lesser investigation, or perhaps exonerated him at the preliminary investigation stage. *Id.*

] *Investigation duplication.* Finally, Babbitt claims that he satisfies the "but for" requirement because the IC's investigation duplicated other previous examinations of the Hudson Casino issue, particularly the investigation of the Senate Governmental Affairs Committee, the investigation of the House Committee on Government Reform and Oversight, and the preliminary investigation of the Department of Justice. We have in the past awarded fees when the independent counsel's investigation constituted a substantial duplication of the preliminary investigation of the DOJ. *See In re Olson*, 884 F.2d 1415, 1420 (D.C.Cir., Spec. Div., 1989) (per curiam) (IC's investigation "necessarily duplicated ground that had been covered by the preliminary investigation of the Department of Justice"); *In re Perry*, 892 F.2d 1073, 1074 (D.C.Cir., Spec. Div., 1990) (per curiam) (fee applicant "was being subjected to expenses for a duplicative investigation that he would not have been subjected to in the absence of the Ethics in Government Act"). But we have specifically held that it is only duplication of the preliminary investigation by the DOJ that merits fee reimbursement, and so duplication by the IC of other investigations, such as those conducted by the Congress, is not relevant to this issue. *See In re Pierce (Sanders Fee Application)*, 198 F.3d 899, 904 (D.C.Cir., Spec. Div., 1999) (per curiam), and *In re Pierce (Seligman Fee Application)*, 201 F.3d 473, 476 (D.C.Cir., Spec. Div., 2000) (per curiam). Consequently, although Babbitt argues that the "OIC's endeavors substantially overlapped with the work of the two congressional Committees," it is only duplication of the DOJ's investigation that need concern us here.

In that regard, Babbitt claims that the OIC's work substantially duplicated the Justice Department's efforts of reviewing transcripts from the congressional hearings, interviewing witnesses, and gathering relevant information concerning the con-

flicting testimony. He further claims that the Justice Department also conducted an inquiry into the substance and process of the underlying casino decision, and that he was interrogated before the grand jury by the OIC about many of the same topics that he had been asked about in a Justice Department/FBI interview.

■ We note that the process of an independent counsel investigation set up by the Act will by its very nature necessarily replow some of the same ground already tilled by the DOJ. The issue to be addressed is whether the investigation by the IC merely duplicates that of the DOJ. Duplication by definition does not occur if the IC's investigation extends significantly beyond that of the DOJ's preliminary investigation. *See In re Olson*, 884 F.2d at 1420 ("but for" requirement satisfied where "[t]he *greater portion* of [the IC's] investigation" duplicated that of the DOJ.) (emphasis added). As we stated in *Kisner*, the fee applicant could not satisfy the "but for" requirement by claiming that the Independent Counsel's investigation duplicated that of the DOJ because "the Independent Counsel's investigation ranged far beyond the preliminary investigation not only in depth but breadth. The matters investigated as to Kisner are far beyond anything in the preliminary investigation." 178 F.3d at 1360. We find similar circumstances here. Under the Act the AG is limited to 90 days to complete her preliminary investigation and while conducting it she is not allowed, *inter alia*, to convene grand juries or issue subpoenas. 28 U.S.C. § 592(a). In her Application she stated that only "a limited inquiry" was conducted by the DOJ into the underlying casino decision. In contrast, the IC over a period of 21 months conducted an extensive investigation of Babbitt's statements and the underlying casino decision. Her office interviewed 460 people, reviewed

over 630,000 documents, issued grand jury subpoenas to 167 people, and interrogated 58 of them before the grand jury. FINAL REPORT OF THE INDEPENDENT COUNSEL IN RE: BRUCE EDWARD BABBITT at 3–4. Therefore, the IC's investigation cannot in any relevant sense be considered duplicative of the DOJ's preliminary investigation.

\* \* \* \* \* \* \* \* \* \*

■ In sum, Babbitt has not satisfied the "but for" requirement under any of the aforementioned theories because "he was not subjected to an investigation that he would not have been subjected to in the absence of the Act." *Nofziger*, 925 F.2d at 446. The allegations concerning both the perjury and false statements by the Secretary of the Interior as well as the corruption of the underlying casino decision would in all probability have been extensively investigated by the Department of Justice in the absence of the independent counsel statute. *See Kisner*, 178 F.3d at 1360–61. We do however conclude that Babbitt's petition and the accompanying affidavits support recovery for one element. Babbitt incurred legal fees for the time spent by his counsel in reviewing and responding to the final report of the independent counsel. No such report would have been prepared, filed, reviewed, or responded to but for the Act. Specifically, 28 U.S.C. § 594(h)(1)(B) requires that the independent counsel "file a final report with the Division of the Court setting forth fully and completely a description of the work of the independent counsel...." Absent the Act, federal "prosecutors do not issue reports." *In re: North*, 16 F.3d 1234, 1238 (D.C.Cir., Spec. Div., 1994) (per curiam). Indeed, as we have observed before, "the filing of reports by independent counsels is 'a complete departure from the authority of a United States Attorney' and is contrary to the practice in federal grand jury investigations." *Id.* quoting *In re:*

*Sealed Motion,* 880 F.2d 1367, 1369–70 (D.C.Cir., Spec. Div., 1989) (per curiam). Therefore, we hold that Babbitt has established that he has incurred the fees occasioned by the report itself and would not have incurred those fees but for the Act. We therefore order filed simultaneously herewith an entered judgment in favor of Babbitt for $52,091.94 representing legal services expended in the processing of the final report and Babbitt's response thereto.

### CONCLUSION

For the reasons set forth above, we allow in part the petition of Bruce Edward Babbitt to the extent of ordering reimbursement for attorney fees in the amount of $52,091.94. We deny the balance of the petition for failure to comply with the but for requirements, 28 U.S.C. § 593(f)(1).

RICHARD D. CUDAHY, Circuit Judge, concurring in part and dissenting in part:

The comparison of a real-life investigation to a hypothetical investigation—which is what the "but for" test is all about—is necessarily conjectural. We can really only guess what kind of an inquiry Secretary Babbitt would have been subjected to had there been no Independent Counsel Act.

The majority concedes that Secretary Babbitt is entitled to fees incurred in responding to the final report of the independent counsel. I agree with this unarguable concession as to an expense which could not possibly have been incurred but for the independent counsel's investigation. But I cannot agree that this relatively minor item exhausts the compensation to which the Secretary is legitimately entitled.

In exploring Secretary Babbitt's full entitlement to fees, I intend to make some general observations about our difficulties in attempting to compare an independent counsel's investigation with a hypothetical investigation of the same subject by someone else. Then I will demonstrate that the independent counsel's investigation of Secretary Babbitt fits squarely within the statutory language and precedents that authorize this court to award attorneys' fees.

### I.

The legislative history of the Independent Counsel Act contains language which has been cited in a number of our opinions to justify a parsimonious policy on the allowance of attorneys' fees.[1] The Senate Report has language like "attorneys' fees would be warranted, if at all, in only rare instances" and "the court should award attorneys' fees sparingly, and ... reimbursement should not become a routine event." S.Rep. No. 97–496, at 19 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3537, 3555. But the same report quotes attorney Lloyd Cutler with approval as follows:

> So no matter what the outcome, it's clear to me, at least, that the appointment of an independent counsel increases the cost to the individual and that since that was done primarily for the benefit of the public, the public ought to bear that additional cost at least in the circumstance where no indictment is brought in the end.

*Id.* The report, therefore, seems to be saying, "Yes, independent counsel investigations cost the targets more than do oth-

---

1. *See, e.g, In re Nofziger,* 938 F.2d 1397, 1401 (D.C.Cir., Spec. Div., 1991) (quoting S.Rep. No. 97–496 for the proposition that attorneys' fee should be awarded "only in rare instances," and ruling that inherently higher costs of defending against independent counsel investigation do not justify fees); *In re Nofziger,* 925 F.2d 428, 437 (D.C.Cir., Spec. Div., 1991) (quoting same passage from S.Rep. No. 97–496 and making same determination).

ers and the taxpayers ought to cover the increase, but don't approve too many reimbursements." This is clearly schizophrenic—perhaps a chronic failing of legislative history—and we have to make our way between the conflicting goals as best we can.[2]

The fact is that there is a lot of guesswork in comparing an actual with a hypothetical investigation. *Cf. In re Nofziger,* 925 F.2d 428, 433 (D.C.Cir., Spec. Div., 1991) ("To determine [for purposes of an attorneys' fee award] whether the subject of an independent counsel investigation has been subjected to a more rigorous *application of the criminal law,* the court must compare the investigation of the subject of the independent counsel investigation with an investigation into possible violations of the same statute conducted *in the absence of the Independent Counsel Act.*" (emphasis in original)). Our court has tried to make the guesswork less perplexing by creating, in practical effect, a

sort of implicit presumption that all investigations of a given subject—whoever conducts them—are fungible. Thus, with a few narrow exceptions,[3] if an investigation is made under the very special—indeed unique—provisions of the independent counsel statute, it may be presumed that the very same investigation, placing the very same financial burden on the subject, would have been carried out, for example, by the Department of Justice in the absence of the statute. It would follow from the indulgence of this implicit presumption that a subject would incur no additional fees on account of the investigation by the Independent Counsel, and therefore the overwhelming majority of fee requests would be rejected in full. As this implicit presumption has progressed and become more controlling in the last several years, that is exactly what has taken place: very few requests for fees have been granted.[4]

Many observers might think that this more recent wholesale denial of fee peti-

**2.** Interestingly enough, the same legislative history that has been used to deny attorneys' fees has also been used to award them. *Compare* note 1 (cases relying on S.Rep. No. 97–496 to deny fees), *with In re North (Dutton Fee Application),* 11 F.3d 1075, 1080 (D.C.Cir., Spec. Div., 1993) (citing S.Rep. No. 97–496 for proposition that fee provision is meant to offset costs that would not have been incurred by a private citizen defending himself against a normal DOJ investigation, and thus awarding fees to petitioner), *and In re Olson,* 884 F.2d 1415, 1420 (D.C.Cir., Spec. Div., 1989) (quoting S.Rep. No. 97–496 for the proposition that attorneys' fee should be awarded "only in rare instances," such as when actions by the independent counsel duplicate actions by the Attorney General, but awarding fees for duplication, for an unsuccessful constitutional challenge and for expenses related to the final report).

**3.** In *In re Pierce (Kisner Application),* 178 F.3d 1356, 1359 (D.C.Cir., Spec. Div., 1999), we set forth four categories in which the "but for" test is satisfied. However, we also noted that "these categories are not exhaustive, and

probably could not be, given the 'fact-specific nature of each independent counsel undertaking.' " *Id.* (quoting *In re North (Dutton Fee Application),* 11 F.3d at 1080). A review of our recent precedents, however, suggests a marked unwillingness to go beyond these four restrictive fact patterns.

**4.** A careful examination of the case law reveals an undeniable drift in our jurisprudence. For example, in *In re Donovan,* 877 F.2d 982 (D.C.Cir., Spec. Div., 1989), this court granted attorneys' fees to former Secretary of Labor Donovan despite the fact that the evaluation of the fee petition by the Department of Justice found it "facially deficient in demonstrating that the fees would not have been incurred but for the Act." *Id.* at 986. In the case before us, on the other hand, the Department of Justice acknowledged the limitations imposed on the preliminary investigation by 28 U.S.C. § 592(a)(2)(B)(ii), the paucity of incriminating evidence and the subsequent breadth of the independent counsel investigation to conclude that the "but for" requirement had been satisfied. DOJ Evaluation at 11–12.

tions was clearly in the public interest and merely represented a sturdy defense of the public fisc. And, as noted, it is not difficult to find snippets of legislative history leaning the same way. I would remind those who might be of this opinion, however, that the only persons entitled to fees are those who were in fact targets of an investigation by an independent counsel and who were not indicted for a crime. In effect, these are people in the center of the prosecutor's bull's-eye, who were not indicted—who were exonerated. In providing such people with an opportunity to recover fees, Congress expressed the hope that, if they escaped punishment by the courts, they should not incur perhaps the worse punishment of crippling attorneys' fees. High as these fees were, however, in relation to the resources of the subjects— here Secretary Babbitt's fees are more that a year's salary—the requested fees are almost trivial in comparison with the formidable cost to the taxpayers of conducting the investigation. Thus, through September 30, 2001, the total expense reported by the Independent Counsel for investigating Secretary Babbitt amounted to $6,348,777, which is over thirty times the sum Babbitt has been forced to expend in his own defense. In truth, the only place where stringent standards of economy have been applied in the current investigation is in evaluating Secretary Babbitt's petition for fees.

But, if the majority has applied the "but for" test here with excessive zeal, what is a proper standard for estimating the scope of the investigation that would have looked into Secretary Babbitt's conduct in the absence of the Independent Counsel Act? As the discussion so far has suggested, this is not an easy question, and it has no easy answer. The majority seems to have taken a simple, if not simplistic, approach in indulging an implicit presumption that *any* alternative investigation of Mr. Bab-

bitt would cover exactly the same ground to exactly the same depth as the independent counsel's inquiry (and, I suppose, reach the same conclusion).

I am certainly willing to accept an inquiry by the Department of Justice as a reasonable alternative under the statute for application of the "but for" test. It is not unreasonable to posit that the DOJ would have conducted an inquiry into the somewhat discrepant accounts, as recalled two years later, of a hurried conversation between Secretary Babbitt and Mr. Eckstein on July 14, 1995. But what kind of an investigation would it have conducted? Would it have taken 21 months and involved (as did the independent counsel's probe) the review of 630,000 documents, the conducting of 460 interviews, the issuance of 160 subpoenas, the calling of 58 witnesses before the grand jury and the preparation and issuance of a 484–page final report detailing every aspect of an incredibly thorough investigation?

I think an overwhelming inference may be drawn from all the circumstances involved that the DOJ would never have conducted such an inquiry. One of the better pieces of evidence for this conclusion is the very judgment that the DOJ reached in submitting its evaluation of Secretary Babbitt's fee petition. In this document, the DOJ clearly stated that the Secretary's request *passed* the "but for" test. Apparently, the Department did not see itself conducting an independent counsel-type inquiry in the case of Secretary Babbitt. And we have noted in an earlier case the kind of investigation (in the case of another cabinet officer) that is expected of an independent counsel: "[e]xtraordinary thoroughness of investigation is to be expected in some independent counsel investigations because of the institution of the independent counsel, and the extensive nature of the investigation and the report

required by Congress." *In re Meese*, 907 F.2d 1192, 1201 n. 16 (D.C.Cir., Spec. Div., 1990) (awarding reimbursement of fees).

## II.

### A.

Turning now to the merits of Secretary Babbitt's fee petition, § 593(f)(1) of the Independent Counsel Act provides that an individual who has been subject to an investigation that did not result in an indictment is eligible for an "award of reasonable attorneys' fees incurred by that individual during that investigation that would not have incurred but for the requirements of this chapter." Secretary Babbitt argues that one of the requirements of the Act, 28 U.S.C. § 592(a)(2)(b)(ii), which deals with evidence of criminal intent, resulted in a more expansive investigation, and thus higher burdens on him to defend. The majority never squarely addresses this argument, instead making the conclusory assertion that "the high profile identity of those involved would have resulted in an investigation of similar length and breadth if it had been undertaken by the Department of Justice in the absence of the Independent Counsel Act." *Ante* at 392.

The thrust of Babbitt's argument can be summarized as follows: 28 U.S.C. § 592 prescribes the procedures that the Attorney General must follow when conducting the required 90-day preliminary investigation. In making her determination whether "reasonable grounds exist to warrant further investigation," the Independent Counsel Act generally requires that the Attorney General "comply with the written or other established policies of the Department of Justice with respect to the conduct of criminal investigations." § 592(c)(1). However, the subsection relied on by Secretary Babbitt provides an exception to this general rule; it substantially constrains the Attorney General's ability to focus on an accused person's state of mind in determining the need for further investigation:

> The Attorney General shall not base a determination under this chapter that there are no reasonable grounds to believe that further investigation is warranted, upon a determination that such person lacked the state of mind required for the violation of the criminal law involved, unless there is clear and convincing evidence that the person lacked such a state of mind.

28 U.S.C. § 592(a)(2)(B)(ii).

Although this court has never before considered this provision in the context of the "but for" requirement for attorneys' fees,[5] commentators have sharply criticized this § 592(a)(2)(B)(ii) as a dramatic departure from ordinary criminal procedure. For example, Professor Gormley has noted that the "clear and convincing" provision necessarily requires a referral to an independent counsel except in the unusual case

---

5. In contrast, this court has occasionally awarded fees when it has determined that the Attorney General could have disposed of the case at a earlier stage of investigation *but for* other limitations on the investigatory process imposed by the Act. *See, e.g., In re Sealed Case*, 890 F.2d at 453 (granting attorneys' fees in case where strictures of § 592(a)(2)(A), which preclude the use of grand juries, subpoenas, etc., limited the ability of the Attorney General to conduct an adequate preliminary investigation); *In re Donovan*, 877 F.2d at 990 (granting attorneys' fee to former Secretary of Labor Donovan because, pursuant to § 592(a)(2)(A), the Deputy Attorney General was unable "to convene grand juries, plea bargain, grant immunity, or issue subpoenas," and thus "was deprived of his normal means of determining credibility and other relevant facts").

where evidence of *innocence* is particularly strong:

> [T]he key question normally assessed by a prosecutor in a criminal matter before exercising his or her discretion to prosecute—i.e. whether the conduct was inadvertent or negligent rather than knowing and intentional—cannot be considered by the Attorney General. This provision should be deleted entirely, since it further hamstrings the Attorney General and prevents her from conducting meaningful preliminary investigations to separate serious cases from minor, politically mischievous matters.

Ken Gormley, *An Original Model of the Independent Counsel Statute,* 97 Mich. L.Rev. 601, 649 (1998) (footnote omitted); *see also* Philip B. Heymann, *Four Unresolved Questions About the Responsibilities of an Independent Counsel,* 86 Geo. L. J. 2119, 2123 n. 13 (1998) (noting that in making recommendation for further investigation, "the Attorney General is precluded from finding that a person lacked the state of mind required to violate the criminal law, unless there is clear and convincing evidence of the absence of the requisite criminal intent—*reversing the burden of proof applicable at trial*" (emphasis added)). A review of the legislative history on this "clear and convincing" requirement, which was added to the Act in 1987, reveals that this provision was specifically designed to curtail the ability of the Attorney General to close a case based on lack of criminal intent. *See* S.Rep. No. 100–123, at 18 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2150, 2167. Apparently, Congress had become ⁻dissatisfied with several investigations that had been terminated on this basis. *See id.* (discussing Attorney General Meese's decision to terminate the Schmults investigation on criminal intent grounds, and noting that the new provision "requires that, in such cases,

the Attorney General must leave that issue to an independent counsel"). The effect of this provision is that most issues of criminal intent that might otherwise result in the termination of an investigation by the Attorney General must instead be resolved by the independent counsel.

In the case before us, the Attorney General specifically acknowledged the limitations that the Independent Counsel Act imposed on her discretionary authority:

> The question of whether the potentially false statements at issue are material enough to warrant criminal prosecution is a prosecutive judgment that I am not permitted to make under the Independent Counsel Act. Nor am I permitted under the Act to decline to seek an appointment of an Independent Counsel based on the subject's lack of criminal intent unless I have clear and convincing evidence that he lacked the requisite state of mind. In this case, although there is evidence suggesting that Secretary Babbitt lacked criminal intent, I am unable to conclude at this juncture that such evidence is clear and convincing.

Appointment Application at 7. Moreover, the Attorney General also noted that "our preliminary investigation uncovered no evidence of criminal misconduct by Secretary Babbitt in the underlying matter [regarding the proposed Hudson casino]." *Id.* Both of these passages are quoted by the Department of Justice as the basis of its determination that Secretary Babbitt had indeed satisfied the elusive "but for" element of § 593(f)(1). Therefore, the issue before us is whether, but for the "clear and convincing" requirement of § 592(a)(2)(B)(ii), the investigation of Secretary Babbitt would likely have assumed the same scope, had the same duration and therefore demanded the same level of expenditures for a legal defense.

To my mind, a careful examination of the fees question in Babbitt's case necessarily gives rise to an overwhelming inference that but for the "clear and convincing" requirement of § 592(a)(2)(B)(ii), the investigation of Secretary Babbitt would have ended at a much earlier date. In cases where this court has awarded attorneys' fees based on a more rigorous application of the criminal law, the Attorney General's application for appointment of an independent counsel has frequently mentioned a shortcoming or disability in the preliminary investigation that is directly attributable to the requirements of the Act. *See, e.g., In re Sealed Case*, 890 F.2d at 453 (noting that Attorney General application cited "the Department's inability to use compulsory process" under § 592(a)(2)(A) as limiting the scope of its preliminary investigation); *In re Donovan*, 877 F.2d at 988 (noting that Attorney General's application stated that preliminary investigation was "hampered" by the limitations of § 592(a)(2)(A), which precluded the use of plea bargaining, immunity, grand juries, or subpoenas). In this case, Attorney General Reno specifically referred to the limitations placed on her prosecutorial discretion by the clear and convincing standard, notwithstanding the existence of "evidence suggesting that Secretary Babbitt lacked criminal intent." Appointment Application at 7. When such a case is allowed to proceed without any prosecutorial fruits (e.g., indictments and plea bargains in exchange for testimony) despite massive investment of resources by the independent counsel, the subject of the probe has surely been on the receiving end of "a 'more rigorous application of the criminal law than is applied to other citizens.'" *In re Meese*, 907 F.2d at 1201 (quoting S.Rep. No. 97–496, 1982 U.S.C.C.A.N. at 3555).

As our earlier precedents suggest, the existence of prosecutorial fruits has sometimes helped to fortify the "but for" requirement of the attorneys' fees provision. For example, in *In re Pierce (Pierce Fee Application)*, 213 F.3d 713 (D.C.Cir., Spec. Div., 2000), which also dealt with a long and expanding investigation, this court determined that:

> the expansion occurred *because the investigation itself* revealed further evidence of fundamental corruption of a federal housing program and such crimes as perjury, bribery, and obstruction of justice. We are convinced that this matter would have been investigated for a significant period of time by any professional or politically appointed public prosecutor. Pierce was not, therefore, subjected to a more rigorous application of the criminal law than would have been applied to ordinary citizens.

*Id.* at 718 (emphasis added). The court then went on to conclude that Pierce failed the "but for" requirement and was therefore not entitled to his attorneys' fees. *Id.* at 719.

Because both the Babbitt investigation and *Pierce* involved alleged wrongdoing among high-profile officials, the majority relies on *Pierce* to assert here that the Department of Justice would have undoubtedly conducted "an investigation of . . . length and breadth [similar to *Pierce*] . . . in the absence of the Independent Counsel Act." *Ante* at 392. Although the majority is correct in asserting that both *Pierce* and the instant case involved *allegations* of various species of "corruption" on the part of prominent suspects, *ante* at 392, the intermediate and final *outcomes* of these two investigations could not stand in greater contrast to one another. The parallels drawn by the majority are therefore completely unjustified. In *Pierce*, there were dozens of indictments that ultimately resulted in the successful prosecutions of seventeen subjects. *See* 213 F.3d at 716.

The apparently more plausible nature of the allegations resulting in those jury verdicts would certainly have motivated the DOJ to conduct from the start a much more thorough-going inquiry there than here, where no one was either indicted or convicted—an outcome that might have been foreseen by knowledgeable prosecutors. Even if we are not for some reason entitled to endow these hypothetical prosecutors with foresight as to how things would turn out, I see no reason why Secretary Babbitt is not entitled to the benefit of hindsight.

Although the majority has placed heavy reliance on *In re Pierce,* perhaps a better precedent to consider is *In re Meese,* which also involved an investigation of a cabinet official. In *Meese,* this court commented on the length and breadth of an investigation that included six additional matters beyond the initial referral and concluded, "It thus clearly appears that the basis upon which the referral was made and the extreme expansion of the resulting investigation subjected Meese to a *'more rigorous application of the criminal law* than is applied to other citizens.'" *Id.* at 1201 (quoting S.Rep. No. 97–496, 1982 U.S.C.C.A.N. at 3555) (emphasis added). Meese was subsequently awarded his attorneys' fees. In the case before us, Babbitt points out that the independent counsel investigation went well beyond the Babbitt–Eckstein conversation on July 14, 1995 and the underlying Hudson casino dispute, to include an examination of the decision-making process in eleven other matters involving Indian gaming, each of them concerning a different tribe located in another part of the country. The Independent Counsel ultimately found "insufficient evidence to warrant criminal prosecution *of anyone* for conduct related to the Hudson casino proposal, including Secretary Babbitt for his testimony about the Hudson matter before Congress." FINAL

REPORT at 415 (emphasis added). Like *Meese,* the expansion of an independent counsel investigation far beyond its initial scope suggests that Babbitt has been subjected to a more rigorous application of criminal law.

As the forgoing discussion demonstrates, the Independent Counsel Act requires that when lack of evidence on criminal intent might otherwise result in the termination of the Attorney General's investigation, the investigation commenced by the Attorney General can only be completed through an inquiry by an independent counsel. *See* 28 U.S.C. § 592(a)(2)(B)(ii). In trying to establish the difference between the known independent counsel's investigation and a hypothetical probe by the DOJ—and thus the difference in defense costs incurred by their respective subjects—one must acknowledge key structural features that distinguish these two modes of criminal prosecution.

On several recent occasions, this court has announced a new insight that the Independent Counsel Act does not contemplate the payment of attorneys' fees for the inherently higher costs of defending against an independent counsel investigation. *See, e.g., In re Nofziger (Bragg Fee Application),* 956 F.2d 287, 294 (D.C.Cir., Spec. Div., 1992) (ruling that "these inherent costs are not reimbursable. Otherwise, fees would be paid in every case—but Congress indicated reimbursement of fees should only occur in 'rare circumstances.'" (quoting S.Rep. No. 97–496)); *In re Nofziger,* 925 F.2d at 445 (same). Instead, according to recent decisions, the Act provides for reimbursement "only of those attorneys' fees that 'would not have been incurred but for *the requirements* of [the Act].'" *In re Nofziger,* 925 F.2d at 445 (quoting 28 U.S.C. § 593(f)(1)) (emphasis in original). Essentially, this is a nar-

row interpretation of "requirements" to mean special demands imposed by the unique features of the Act rather than the general mandate laid down by the statute as a whole. Along these lines, the "requirement" most commonly found in these cases is the proscription of grand juries, subpoenas, immunity, and plea bargaining during a preliminary investigation, *see* note 7 (citing cases awarding attorneys' fees due to limitations imposed by § 592(a)(2)(A)), but the "clear and convincing" standard has, of course, the identical effect. The relevant point is that an unfruitful investigation conducted by the DOJ is likely to wrap up much faster than the same investigation conducted by an independent counsel; thus, a specific requirement of the Act subjected Secretary Babbitt to these higher "inherent costs."

As commentators have frequently noted, the differences in responsibilities and allocation of resources between regular prosecutors and the independent counsel could not stand in greater contrast. *See, e.g.,* Cass R. Sunstein, *Bad Incentives and Bad Institutions,* 86 Geo. L. J. 2267, 2279 (1998) (commenting that the Independent Counsel Act "creates an incentive toward zealotry. An independent counsel who uncovers nothing is likely to look as if he has more or less wasted his time, or done nothing, whereas an independent counsel who brings a prosecution, or several prosecutions, is likely to look, in at least some circles, like another Archibald Cox, a kind of hero of democratic ideals."). Prosecutors in general have a variety of matters competing for their attention and must allocate the resources available to them to the situations most deserving—for various reasons—of their attention. The independent counsel, on the other hand, has a defined target to whom he must devote all his attention and dedicate all his resources—no matter what the attractions of that target may be in comparison with others.

Thus, a regular prosecutor with limited resources and a variety of places to employ them is likely to pursue the most easily convicted target; a cost-benefit analysis would certainly suggest that strong tendency. Judged by the outcome (which is the only test available to us), the *Pierce* inquiry, with its many convictions, in comparison with *Babbitt* would have attracted the most interest and attention from regular prosecutors. They might well have committed resources on the same scale as the independent counsel. On the other hand, the diminished prospects for success in *Babbitt* would almost inevitably have called forth from regular prosecutors a lesser effort than from the independent counsel. This may very well be one of the reasons that the DOJ concluded that Secretary Babbitt's request for fees passed the "but for" test.

But there is another, perhaps less obvious, reason that I cannot agree with the parallel drawn by the majority between *Pierce* and the instant case. *Pierce* might be characterized as a "garden-variety" corruption case. There were allegations of favoritism and mismanagement and of the use of the "revolving door" in dealings with the government. As a result, contractors with the government were allegedly in a position to line their pockets in exchange for benefits and favors conferred on government officials. This is exactly the sort of typical corruption case that a prosecutor in the Department of Justice would like to get his or her hands on. It did not raise larger political questions, like whether officials in the White House were dictating HUD policy outside regular decisional channels, nor whether operatives in a national party headquarters were seeking to manipulate HUD decisions in the interest of big contributors.

In the Babbitt investigation, on the other hand, there were no charges of pocket-

lining graft as it is commonly understood. Instead, this inquiry gained its heft from the larger political issues of improper interventions by White House agents and possible dictation by national committee officers to executive department officials on behalf of big contributors. Alleged abuse of power was very much in the picture. The immediate spark giving rise to the call for an independent counsel was a small discrepancy in two men's recollection of a brief conversation that took place more than two years before either man testified about it. The charges of perjury and false statement arising from this exchange would not have called for a very far-reaching inquiry by the DOJ or anyone else. It was only the political ramifications of how the Hudson casino decision was made that gave ostensible weight to the situation. And this was a matter that could most comfortably be handled by an independent counsel. It is difficult to imagine its being handled effectively by anyone else.[6] This is therefore a classic example of an investigation that would not have taken place in anything like the form that it actually assumed without the intrusion of the Independent Counsel Act. And in the end, to further chill the ardor of an ordinary prosecutor, no one was indicted or prosecuted. Here, the demands of the "but for" test were literally fulfilled—as the Department of Justice itself concluded.

It seems to me that the special provisions of the Independent Counsel Act on *mens rea* fit perfectly into the narrow category of subjection to a more rigorous application of the criminal law. Secretary Babbitt should therefore be awarded his full attorneys' fees. Hence, I respectfully DISSENT from the rejection of this major conclusion.[7]

---

**6.** Some of our earlier precedents relied on the political dimensions of an independent counsel inquiry to determine that the "but for" requirement of § 593(f)(1) had been satisfied. *See, e.g, In re North (Reagan Fee Application),* 94 F.3d 685, 690 (D.C.Cir., Spec. Div., 1996) (ruling that the "but for" requirement is satisfied because "a politically appointed Attorney General would not subject attempts to circumvent the Boland Amendments to criminal prosecution" and thus the Iran/Contra investigation would never have occurred); *In re North (Regan Fee Application),* 72 F.3d 891, 895 (D.C.Cir., Spec. Div., 1995) (same); *In re North (Bush Fee Application),* 59 F.3d 184,

188 (D.C.Cir., Spec. Div., 1995) (same); *In re North (Dutton Fee Application),* 11 F.3d 1075, 1080 (D.C.Cir., Spec. Div., 1993) (providing same rationale and noting that "Dutton's facts do not fit neatly into any box created by a prior opinion").

**7.** As I have earlier indicated, I certainly agree with the majority's determination that Secretary Babbitt is entitled to be made whole for fees incurred in reviewing and responding to the final report of the independent counsel—a phase of the investigation having no counterpart in alternative prosecutorial inquiries.