UNITED STATES COURT OF APPEALS
 FOR THE DISTRICT OF COLUMBIA

 Division for the Purpose of 
 Appointing Independent Counsels
 
 Ethics in Government Act of 1978, As Amended
 
 Filed On: August 19, 2002
 
 In re: Alexis M. Herman Division No. 98-2
 (Herman Fee Application)

 Before: Sentelle, Presiding, and Fay and Cudahy, Senior Circuit Judges.

 ORDER
 
 The concurring opinion of Judge Cudahy in the above-captioned matter, originally filed on 
August 6, 2002, is withdrawn, and an amended concurrence by Judge Cudahy is hereby filed with
the court.

 Per Curiam
 For the Court:
 Mark J. Langer, Clerk
 by 

 Marilyn R. Sargent
 Chief Deputy Clerk

Richard D. Cudahy, Circuit Judge, concurring in the judgment:

 I fully concur in the allowance of fees incurred to respond to the Independent Counsel's final
report an expense which clearly would not have been incurred absent the unique requirements of
the Ethics in Government Act calling for submission of a final report.
 As to the denial by the majority of the remainder of Secretary Herman's fee claims, although
these might be debatable as a matter of first impression, they seem foreclosed by the recent
precedents though not necessarily by older, and established, authority of this court. As the majority
indicates, Secretary Herman makes two arguments: first, that the independent counsel's investigation
here is largely duplicative of the preliminary investigation by the Department of Justice; and second,
that the Act has imposed limitations of prosecutorial means on the Attorney General's preliminary
investigation, which otherwise might have narrowed or obviated the independent counsel's inquiry.
 With respect to the first argument that the independent counsel's investigation is largely
duplicative of the Attorney General's preliminary investigation Herman relies on In re Olson, 884
F.2d 1415, 1420 (D.C.Cir., Spec. Div., 1990) (per curiam). Independent Counsel Lancaster, in his
evaluation of Herman's fee request, argues that the present case can be distinguished from In re
Olson on the ground that here the "scope and depth" of the preliminary investigation were different
from Lancaster's investigation, and that the "conduct" of the two investigations was different. The
majority accepts this argument in denying Secretary Herman her fees.
 The reality is that preliminary investigations examine the same issues as investigations by
the independent counsel, and there is necessarily a distinct similarity between the two procedures. 
The analytical distinction that must somehow be attempted, however, is between (a) the preliminary
investigation, which is conducted for the limited purpose of determining whether a further inquiry
is needed, and (b) the subsequent independent counsel investigation, which is the further inquiry
itself. In recent years, our cases have increasingly emphasized the differences between the two
procedures rather than the similarities.
 In re Olson was the first case to recognize and invoke the duplication theory to award
attorneys' fees, though we have seldom invoked it since then. That case contained only a brief
discussion of duplication as a basis for attorneys' fees, but that discussion (favoring the payment of
fees) was premised on a snippet of legislative history that accompanied the passage of  593(f). Id.
at 1420 (noting that "duplication" by the independent counsel of actions taken by the Attorney
General during the preliminary investigation "is given as one instance where '[r]eimbursement may
be warranted'" (quoting S. Rep. No. 97-496 (1982), reprinted in 1982 U.S.C.C.A.N. 3537, 3555 )
(alterations in original)). In re Olson argues against the result today by failing to include an explicit
comparison of the "scope and breadth" of the preliminary investigation with the "scope and breadth"
of the subsequent independent counsel investigation authorized by it. But, after granting an award
of attorneys' fees, In re Olson goes on to quote further a somewhat contrary passage from the
legislative history that "admonished [the court] to award reimbursement for attorneys' fees 'in only
rare circumstances' for 'extraordinary expenses.'" 884 F.2d at 1420 (quoting S. Rep. No. 97-496).
 In reality, there is duplication in almost every case, although in most it is less than total. As
a result, In re Olson is not an easy case to distinguish. But rather than address this tension, our
subsequent cases have invoked the somewhat contradictory admonishments of a Senate committee
report to consistently reject "duplication"arguments as a basis for recovery. See, e.g., In re Babbitt,
290 F.3d 386, 393-94 (D.C. Cir., Spec. Div., 2002) (rejecting duplication argument and stating that
"[d]uplication by definition does not occur if the IC's investigation extends significantly beyond that
of the DOJ's preliminary investigation" (citing In re Olson, 884 F.2d at 1420)); In re Pierce (Sanders
Fee Application), 198 F.3d 899, 904 (D.C. Cir., Spec. Div., 1999) (rejecting fee application because
the petitioner failed to "put forward evidence that the IC's investigation duplicated the preliminary
investigation conducted by the Attorney General"); In re Pierce (Olivas Fee Application), 178 F.3d
1350, 1354 (D.C. Cir., Spec. Div., 1999) (stating that there can be no "serious argument" that
duplication occurred because "the Independent Counsel's investigation ranged far beyond the
preliminary investigation not only in depth but breadth"); In re Pierce (Kisner Fee Application), 178
F.3d 1356, 1360 (D.C. Cir., Spec. Div., 1999) (same); In re Nofziger, 939 F.2d 1397, 1404 (D.C.
Cir., Spec. Div., 1991) (holding that only those fees resulting from a "substantial duplication of prior
investigations" are reimbursable under  593(f) and distinguishing In re Olson). Whether this blanket
approach, which leaves In re Olson in almost solitary preeminence, would be validated if a rigorous,
case-by-case analysis were employed is questionable.
 On the second point, that the Act hampered the Attorney General's preliminary investigation,
and therefore created the conditions for a more onerous independent counsel inquiry than would
otherwise have been required, see In re Donovan, 877 F.2d 982, 987 (D.C. Cir., Spec. Div., 1989)
(per curiam), there is also room for doubt. Both Independent Counsel Lancaster in his evaluation 
and the majority attempt to distinguish Donovan on the theory that the Attorney General in that case
purportedly lacked the prosecutorial means to resolve an issue of credibility of a single witness, and
this was the point on which the whole case turned. But it is not clear to me why in principle the
denial of important prosecutorial methods should be a "but for" cause of an independent counsel's
investigations if the prosecutorial challenge is simple (as was purportedly the case in Donovan) but
not if the case is complicated by the testimony of "other critical witnesses," as the majority says is
the case here. In any event, when the majority agrees with the Independent Counsel "that if the
Attorney General had had all of the standard prosecutorial tools available to her, the scope, depth and
thoroughness of her investigation would have been similar, if not identical, to that of the Independent
Counsel, . . ." it may be unwittingly making an entirely different point than it seems to be
contemplating. For the point being made by the Independent Counsel's evaluation is that, if the
Attorney General had all the "standard prosecutorial tools," the preliminary investigation would
become as onerous as the resulting independent counsel investigation and would be fully as
expensive, although by statute non-reimbursable.
 In any event, the allegations against Secretary Herman suggested a type of generic
wrongdoing that is quite distinguishable from the charges, for example, against Secretary Babbitt,
in whose case I dissented from the denial of the bulk of the fees. See In re Babbitt, 290 F.3d 386,
395 (D.C. Cir., Spec. Div., 2002) (Cudahy, J., concurring/dissenting). In Babbitt, the investigation
proceeded only because the Attorney General could not abort it unless she found lack of criminal
intent by clear and convincing evidence. See 28 U.S.C.  592(a)(2)(b)(ii). In addition, despite the
extensive marshaling of investigative resources, Babbitt failed to result in a single criminal
indictment. 
 In contrast, the Herman investigation was much narrower in scope, yet it eventually resulted
in the indictment of Abdul Rahman, a foreign national, based on preliminary evidence that Rahman
transferred a large sum of money to Vanessa Weaver, a friend of Secretary Herman, at the same time
that Weaver made donations totaling the same amount to various political organizations. These
allegations are suggestive of the type of generic corruption that would likely have been taken quite
seriously by the Department of Justice. The Department's evaluation of Secretary Herman's fee
petition takes this position:
 Ms. Herman cannot plausibly argue that absent the Independent Counsel law the
 matter of Rahman's campaign contributions a matter involving allegedly unlawful
 political donations by a foreign national with ties to a high-level member of the
 White House staff would not have been investigated. Nor can Ms. Herman
 plausibly argue that Ms. Weaver's involvement in the matter would not have been
 looked into, given the allegation, ultimately reflected in the explicit terms of the
 grand jury's indictment, that Ms. Weaver and/or her companies served as the conduit
 for the illegal funds. From an objective standpoint, it seems clear that this matter,
 including the question of Ms. Weaver's involvement, would have been investigated
 even absent an Independent Counsel statute. 

DOJ Evaluation, at 9; cf. In re Pierce (Pierce Fee Application), 213 F.3d 713, 718 (D.C. Cir., Spec.
Div., 2000) ("The convoluted nature of the corruption involved and the high profile identity of the
suspects and defendants would no doubt have resulted in a complex and lengthy investigation with
or without an independent counsel." (quotations omitted)). 
 Because Olson and Donovan are among the handful of cases that have resulted in an award
of attorney's fees, they are relied upon in virtually every fee petition that comes before this court. 
As noted in my Babbitt dissent, our approach to  593(f) attorneys' fee requests has become quite
rigid in recent years. See 290 F.3d at 396 & n.4 (discussing an "undeniable drift in our
jurisprudence"). However, based on the nature of the allegations in the Herman investigation and
the DOJ preliminary findings, there is really no need to distinguish Olson and Donovan, and we
should curtail what has become a tiresome and legalistic exercise in favor of a judgment whether the
allegations are of a generic or common sort, really inviting investigation in normal course by existing
prosecutors.