United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Filed August 6, 2002

 Division No. 98-2

 In Re: Alexis M. Herman 
 (Herman Fee Application)

 Division for the Purpose of 
 Appointing Independent Counsels 
 Ethics in Government Act of 1978, As Amended

 ---------

 Before: Sentelle, Presiding, Fay and Cudahy, Senior 
Circuit Judges.

 O R D E R

 This matter coming to be heard and being heard before the 
Special Division of the Court upon the petition of Alexis M. 
Herman for reimbursement of attorneys' fees and costs pur-
suant to section 593(f) of the Ethics in Government Act of 
1978, as amended, 28 U.S.C. s 591 et seq. (1994), and it 
appearing to the court that the application is allowable only to 
the extent reflected in the opinion issued contemporaneously 
herewith*, it is hereby

 ORDERED, ADJUDGED, and DECREED that the Unit-
ed States reimburse Alexis M. Herman for attorneys' fees 

__________
 * Separate opinion concurring in the judgment filed by Senior 
Circuit Judge Cudahy.

and expenses she incurred during the investigation by Inde-
pendent Counsel Ralph I. Lancaster in the amount of 
$12,625.75.

 Per curiam

 For the Court:

 Mark J. Langer, Clerk

 
 by Marilyn R. Sargent, Chief Deputy Clerk

 United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Filed August 6, 2002

 Division No. 98-2

 In Re: Alexis M. Herman 
 (Herman Fee Application)

 Division for the Purpose of 
 Appointing Independent Counsels 
 Ethics in Government Act of 1978, As Amended

 ---------

 Before: Sentelle, Presiding, Fay and Cudahy, Senior 
Circuit Judges.

 ON APPLICATION FOR ATTORNEYS' FEES

 Opinion of the Special Court filed PER CURIAM.

 Separate opinion concurring in the judgment filed by Sen-
ior Circuit Judge Cudahy.

 PER CURIAM: Alexis M. Herman petitions this court 
under section 593(f) of the Ethics in Government Act of 1978, 
as amended, 28 U.S.C. s 591 et seq. (1994) (the "Act"), for 
reimbursement of attorneys' fees in the amount of $335,919.52 
that she incurred during and as a result of the investigation 
conducted by Independent Counsel ("IC" or "OIC") Ralph I. 

Lancaster, Jr. Because we conclude that Herman has not 
carried her burden of showing that the fees would not have 
been incurred but for the requirements of the Act, we deny 
the petition except for those fees incurred for review and 
response to the IC's final report.

 Background

 In 1997 the U.S. Department of Justice ("DOJ") received 
information that then-Secretary of Labor Alexis M. Herman, 
while she was Special Assistant to the President in 1996, had 
engaged in possible illegal activity. The pertinent facts sur-
rounding these allegations are as follows: In 1994 Vanessa J. 
Weaver, a close friend of Herman's, formed a partnership, 
International Investment for Business Development ("IIBD"), 
with Laurent J. Yene. In 1996 Singaporean Abdul Rahman 
entered into a retainer agreement with IIBD to promote a 
business of his in Africa. Weaver's partnership with Yene 
apparently ended soon thereafter, at which point Yene began 
making allegations of criminal conduct on the part of Weaver 
and Herman. In particular, Yene claimed that Herman, 
while Special Assistant to the President, had agreed to facili-
tate business for IIBD and another company co-owned by 
Weaver in exchange for a certain percentage of the profits 
made by the companies as a result of Herman's efforts. 
Additionally, Yene claimed that Herman improperly directed 
Weaver to solicit campaign contributions for the Democratic 
National Committee from clients of IIBD, including Abdul 
Rahman.

 Thereafter, the Attorney General (hereinafter referred to 
as "AG" or "DOJ"), pursuant to section 592(a) of the Act, 
conducted a preliminary investigation to determine whether 
further investigation was warranted into whether Herman 
accepted the illegal payments or directed the solicitation of 
the illegal campaign contributions. On May 11, 1998, at the 
conclusion of the preliminary investigation, the AG, having 
determined that further investigation was warranted, submit-
ted her application to us for the appointment of an indepen-

dent counsel to look into the matter (hereinafter referred to 
as "Application").

 On May 26, 1998, we appointed Ralph I. Lancaster, Jr. as 
independent counsel to further investigate the allegations. 
The investigation lasted almost two years and included nu-
merous interviews, extensive document review, and substan-
tial grand jury activity. No charges were brought against 
Herman. Abdul Rahman, however, was indicted on multiple 
counts of making illegal campaign contributions. Pursuant to 
the statute, the IC submitted a final report to this court on 
April 7, 2000. 28 U.S.C. s 594(h)(1)(B).

 Herman, pursuant to section 593(f)(1) of the Act, has 
petitioned this court for reimbursement of the attorneys' fees 
that she incurred during the IC's investigation. As directed 
by section 593(f)(2) of the Act, we forwarded copies of Her-
man's fee petition to the Attorney General and the IC and 
requested written evaluations of the petition. The court 
expresses its appreciation to the IC and the Attorney General 
for submitting these evaluations, which we have given due 
consideration in arriving at the decision announced herein.

 Analysis

 The Independent Counsel statute provides:

 Upon the request of an individual who is the subject of 
 an investigation conducted by an independent counsel 
 pursuant to this chapter, the division of the court may, if 
 no indictment is brought against such individual pursuant 
 to that investigation, award reimbursement for those 
 reasonable attorneys' fees incurred by that individual 
 during that investigation which would not have been 
 incurred but for the requirements of this chapter.
 
28 U.S.C. s 593(f)(1). Accordingly, in order to obtain an 
attorneys' fees award under the statute, a petitioner must 
show that all of the following requirements are met: 1) the 
petitioner is a "subject" of the investigation; 2) the fees were 
incurred "during" the investigation; 3) the fees would not 

have been incurred "but for" the requirements of the Act; 
and, 4) the fees are "reasonable." See In re North (Dutton 
Fee Application), 11 F.3d 1075, 1077-82 (D.C. Cir., Spec. 
Div., 1993) (per curiam). The petitioner "bears the burden of 
establishing all elements of [her] entitlement." In re North 
(Reagan Fee Application), 94 F.3d 685, 690 (D.C. Cir., Spec. 
Div., 1996) (per curiam). There appears to be little dispute 
that Herman was a "subject," that her fees were incurred 
during the IC's investigation, and that, for the most part, her 
fees are reasonable. We will therefore limit our discussion to 
the third requirement, known as the "but for" test.

 * * * * * * * * * *

 We have previously held that "[a]ll requests for attorneys' 
fees under the Act must satisfy the 'but for' requirement." 
In re Sealed Case, 890 F.2d 451, 452 (D.C. Cir., Spec. Div., 
1989) (per curiam). And we have repeatedly observed that 
"[t]he most difficult element for a fee applicant to establish 
under the Act is that the fees 'would not have been incurred 
but for the requirements of [the Act].' " In re North (Bush 
Fee Application), 59 F.3d 184, 188 (D.C. Cir., Spec. Div., 
1995) (per curiam) (quoting Dutton, 11 F.3d at 1079). In 
order to establish eligibility for an award, the fee applicant 
must show that the amounts claimed are only those fees and 
expenses above and beyond those she would have incurred as 
a result of an investigation by the DOJ. In re Sealed Case, 
890 F.2d at 452-53. As we stated in In Re Pierce (Olivas Fee 
Application), 178 F.3d 1350 (D.C. Cir., Spec. Div., 1999) (per 
curiam), "[i]f the investigative act generating the defensive 
costs would, in the absence of the Act, have been pursued by 
other authorities--'had the case been handled by the Depart-
ment of Justice or other executive authorities rather than the 
Independent Counsel'--then Congress did not contemplate 
the award of counsel fees." Id. at 1355 (quoting Dutton, 11 
F.3d at 1080).

 Herman argues that she satisfies the "but for" requirement 
under two separate theories.

 Duplication of preliminary investigation. We have in the 
past awarded fees when the independent counsel's investiga-
tion constituted a substantial duplication of the preliminary 
investigation of the DOJ, thus satisfying the "but for" re-
quirement. See In re Olson, 884 F.2d 1415, 1420 (D.C. Cir., 
Spec. Div., 1989) (per curiam) (IC's investigation "necessarily 
duplicated ground that had been covered by the preliminary 
investigation of the Department of Justice") (emphasis in 
original); In re Olson (Perry Fee Application), 892 F.2d 
1073, 1074 (D.C. Cir., Spec. Div., 1990) (per curiam) (fee 
applicant "was being subjected to expenses for a duplicative 
investigation that he would not have been subjected to in the 
absence of the Ethics in Government Act"). Herman, relying 
on In re Olson, argues that her case falls into this category 
because the IC's investigation of this matter was duplicative 
of the DOJ's preliminary investigation. She claims that the 
preliminary investigation by the DOJ, as described in the 
AG's application for the appointment of an IC, and the 
investigation by the IC as described in his final report, 
confirm this duplication. She claims that further confirma-
tion of this duplication can be seen in the similarities between 
the two areas of inquiry in the AG's recommended statement 
of jurisdiction and the two primary areas of the IC's investi-
gation as set forth in the final report.

 In his evaluation of Herman's fee petition, the IC disputes 
her claim that she satisfies the "but for" requirement. The 
IC argues that since pursuant to the Act the AG conducts a 
preliminary investigation to determine whether further inves-
tigation is warranted, then necessarily an independent coun-
sel's investigation is going to address the same issues. Her-
man's reliance on In re Olson is misplaced, the IC claims, 
because in that case the independent counsel's investigation 
duplicated ground covered by the preliminary investigation, 
whereas in this case "the actual scope, depth, and conduct of 
the two investigations" show that the IC's investigation com-
pleted the preliminary investigation.

 We note that the process of an independent counsel investi-
gation set up by the Act will by its very nature necessarily 
replow some of the same ground already tilled by the DOJ. 

Section 592(a)(1) directs the Attorney General to conduct a 
preliminary investigation "in order to make a determination 
... on whether further investigation is warranted, with re-
spect to each potential violation, or allegation of a violation, of 
criminal law." 28 U.S.C. s 592(a)(1) (emphasis added). Con-
sequently, the matters under investigation by an independent 
counsel are generally going to be the same as those investi-
gated during the preliminary investigation. The question we 
need to answer is whether the investigation by the IC merely 
duplicates that of the DOJ. Duplication by definition does 
not occur if the IC's investigation extends significantly be-
yond that of the DOJ's preliminary investigation. See In re 
Olson, 884 F.2d at 1420 ("but for" requirement satisfied 
where "[t]he greater portion of [the IC's] investigation" dupli-
cated that of the DOJ) (emphasis added). In In re Pierce 
(Kisner Fee Application), 178 F.3d 1356 (D.C. Cir., Spec. 
Div., 1999) (per curiam), we stated that the fee applicant 
could not satisfy the "but for" requirement by claiming that 
the Independent Counsel's investigation duplicated that of the 
DOJ because "the Independent Counsel's investigation 
ranged far beyond the preliminary investigation not only in 
depth but breadth. The matters investigated as to Kisner 
are far beyond anything in the preliminary investigation." 
Id. at 1360. We find similar circumstances here. Under the 
Act the AG was limited to 150 days within which to complete 
her preliminary investigation, and while conducting it she was 
not allowed, inter alia, to convene grand juries or grant 
immunity. 28 U.S.C. s 592(a). According to the IC, the 
DOJ in conducting the preliminary investigation gathered 
9500 pages of documents from 15 persons and conducted 100 
interviews of 89 persons. In contrast, the IC conducted his 
investigation of the allegations surrounding Herman over a 
period of almost two years, during which time he obtained 
over 250,000 pages of documents, interviewed 168 witnesses 
in a series of 203 interviews, questioned 57 persons before the 
grand jury of whom 43 had not been questioned as part of the 
preliminary investigation, and granted immunity to 12 per-
sons. Additionally, the IC obtained an indictment of Abdul 
Rahman on multiple counts of making illegal campaign contri-

butions through Vanessa Weaver, in violation of U.S. election 
laws. Therefore, the IC's investigation cannot in any rele-
vant sense be considered duplicative of the DOJ's preliminary 
investigation.

 The Act hampered the AG's preliminary investigation. 
Herman further argues that she satisfies the "but for" ele-
ment because the statutory requirements of the Act ham-
pered the preliminary investigation conducted by the AG, and 
if the AG had not been so hampered then Herman would have 
been subjected to either a much more limited investigation or 
perhaps no investigation. See In re Sealed Case, 890 F.2d at 
453; In re Donovan, 877 F.2d 982, 987 (D.C. Cir., Spec. Div., 
1989) (per curiam). Specifically, Herman contends that "the 
credibility of Mr. Yene was central to the Attorney General's 
decision to seek an appointment of an independent counsel," 
and that the Act's restrictions prevented the AG from resolv-
ing Yene's credibility. She quotes from the AG's Application 
that during the preliminary investigation the AG was "unable 
to conclude that [Yene] is not credible. This, coupled with 
the strictures and limited investigative tools available under 
the Act, have led me to conclude that there are reasonable 
grounds to believe that further investigation is warranted." 
According to Herman, had the Act's restrictions not ham-
pered the AG then the AG could have resolved Yene's credi-
bility and "there most likely would never have been an 
independent counsel in this matter."

 For authority, Herman cites to both Donovan and In re 
Sealed Case. She argues that in Donovan the Attorney 
General had noted in his application for appointment of an 
independent counsel that the limitations of the Act had ham-
pered his ability to resolve the issue of the credibility of the 
one witness upon whom the case rested, and therefore an 
independent counsel would not have been appointed but for 
the requirements of the Act. See Donovan, 877 F.2d at 990. 
Herman claims that her case also revolved around the credi-
bility of one witness, Yene, and that "had Attorney General 
Reno had the same tools available to her that Independent 
Counsel Lancaster had at his disposal, she would have been 
able to resolve this issue quickly with little if any expense to 

Secretary Herman." We disagree. As the IC points out, 
Donovan is not analogous to the situation here. In that case, 
we found the "but for" requirement satisfied because there 
was a single witness of dubious credibility who would not 
cooperate during the preliminary investigation. If the AG's 
office had been able to use normal prosecutorial means to 
assess the witness's credibility, then there would have been 
no need for the appointment of an independent counsel. 
Here, in contrast, Yene did cooperate during the preliminary 
investigation, and the allegations against Herman did not rise 
and fall simply on his credibility: in requesting the appoint-
ment of an independent counsel, the AG in her Application 
cited to "inconsistent and evolving explanations by other 
critical witnesses." We therefore agree with the IC "that if 
the Attorney General had had all of the standard prosecutori-
al tools available to her, the scope, depth and thoroughness of 
her investigation would have been similar, if not identical, to 
that of the Independent Counsel."

 Herman likewise argues that in In re Sealed Case the 
Attorney General made a representation, similar to that made 
in Donovan, that he was unable to use compulsory process 
during the preliminary investigation, and that the subsequent 
independent counsel inquiry of a government official's tax 
returns for a period of nine years was far more probing than 
an ordinary taxpayer would have undergone. Consequently, 
the "but for" requirement was satisfied. See In re Sealed 
Case, 890 F.2d at 453-54. Similarly, Herman asserts that her 
own tax returns, financial records, and personal finances were 
subjected to intense scrutiny and that therefore she was 
"subjected to a more probing and thorough investigation than 
that to which a normal citizen would have been subjected." 
We do not find this assertion persuasive. As the IC points 
out, any prosecutor investigating allegations of illegal pay-
ments as in this case "would be remiss if he did not obtain 
and analyze the subject's financial and tax records as those 
records form the best evidence as to existence of illegal 
payments."

 * * * * * * * * * *

 In sum, we agree with both the Department of Justice and 
the Independent Counsel that the principal allegations sur-
rounding this matter, i.e., a senior White House official 
receiving payments for using her influence to further the 
interests of business clients of a friend and her participation 
in a conduit scheme to solicit campaign contributions from a 
foreign national, would have been thoroughly investigated by 
the DOJ in the absence of the Act. Herman has not satisfied 
the "but for" requirement under either of the theories that 
she relies upon because she "was not subjected to an investi-
gation that [she] would not have been subjected to in the 
absence of the Act." In re Nofziger, 925 F.2d 428, 446 (D.C. 
Cir., Spec. Div., 1991) (per curiam).

 But although Herman was not investigated by the IC 
differently than she would have been otherwise, in the ab-
sence of the Act she would not have incurred fees for review 
and response to the IC's final report. Section 594 of the Act 
requires that the independent counsel "file a final report with 
the division of the court, setting forth fully and completely a 
description of the work of the independent counsel...." 28 
U.S.C. s 594(h)(1)(B). Absent the Act, federal "prosecutors 
do not issue reports." In re North, 16 F.3d 1234, 1238 (D.C. 
Cir., Spec. Div., 1994) (per curiam). Indeed, as we have 
observed before, "[t]he filing of reports by Independent 
Counsels is 'a complete departure from the authority of a 
United States Attorney' and is 'contrary to the practice in 
federal grand jury investigations.' " Id. (quoting In re Sealed 
Motion, 880 F.2d 1367, 1369-70 (D.C. Cir., Spec. Div., 1989) 
(per curiam)). Therefore, we hold that the amount of 
$12,625.75 in attorneys' fees that Herman incurred for re-
viewing and responding to the IC's final report is reimbursa-
ble.

 Conclusion

 For the reasons set forth above, we allow in part the 
petition of Alexis M. Herman to the extent of ordering 
reimbursement for attorneys' fees in the amount of 

$12,625.75. We deny the balance of the petition as not 
meeting the "but for" requirement of the Act, 28 U.S.C. 
s 593(f)(1).

 Richard D. Cudahy, Circuit Judge, concurring in the judg-
ment:

 I fully concur in the allowance of fees incurred to respond 
to the Independent Counsel's final report--an expense which 
clearly would not have been incurred absent the unique 
requirements of the Ethics in Government Act calling for 
submission of a final report.

 As to the denial by the majority of the remainder of 
Secretary Herman's fee claims, although these might be 
debatable as a matter of first impression, they seem foreclos-
ed by the recent precedents--though not necessarily by older, 
and established, authority--of this court. As the majority 
indicates, Secretary Herman makes two arguments: first, 
that the independent counsel's investigation here is largely 
duplicative of the preliminary investigation by the Depart-
ment of Justice; and second, that the Act has imposed 
limitations of prosecutorial means on the Attorney General's 
preliminary investigation, which otherwise might have nar-
rowed or obviated the independent counsel's inquiry.

 With respect to the first argument--that the independent 
counsel's investigation is largely duplicative of the Attorney 
General's preliminary investigation--Herman relies on In re 
Olson, 884 F.2d 1415, 1420 (D.C.Cir., Spec. Div., 1990) (per 
curiam). Independent Counsel Lancaster, in his evaluation 
of Herman's fee request, argues that the present case can be 
distinguished from In re Olson on the ground that here the 
"scope and depth" of the preliminary investigation were dif-
ferent from Lancaster's investigation, and that the "conduct" 
of the two investigations was different. The majority accepts 
this argument in denying Secretary Herman her fees.

 The reality is that preliminary investigations examine the 
same issues as investigations by the independent counsel, and 
there is necessarily a distinct similarity between the two 
procedures. The analytical distinction that must somehow be 
attempted, however, is between (a) the preliminary investiga-
tion, which is conducted for the limited purpose of determin-
ing whether a further inquiry is needed, and (b) the subse-
quent independent counsel investigation, which is the further 
inquiry itself. In recent years, our cases have

increasingly emphasized the differences 
between the two procedures rather than the similarities.

 In re Olson was the first case to recognize and invoke the 
duplication theory to award attorneys' fees,1 though we have 
seldom invoked it since then.2 That case contained only a 
brief discussion of duplication as a basis for attorneys' fees, 
but that discussion (favoring the payment of fees) was prem-
ised on a snippet of legislative history that accompanied the 
passage of s 593(f). Id. at 1420 (noting that "duplication" by 
the independent counsel of actions taken by the Attorney 
General during the preliminary investigation "is given as one 
instance where '[r]eimbursement may be warranted' " (quot-
ing S. Rep. No. 97-496 (1982), reprinted in 1982 U.S.C.C.A.N. 
3537, 3555) (alterations in original)). In re Olson argues 
against the result today by failing to include an explicit 
comparison of the "scope and breadth" of the preliminary 

__________
 1 The court in In re Olson analyzed the issue of attorneys' fees in 
four distinct stages of the litigation, including a constitutional 
challenge to the Ethics in Government Act, which the Supreme 
Court rejected in Morrison v. Olson, 487 U.S. 654 (1988). The 
duplication theory was relied upon to satisfy the "but for" test only 
for the first phase of the litigation. See 884 F.2d at 1420.

 2 Apparently, the last case to successfully invoke this exception 
was In re Olson (Perry Fee Application), 892 F.2d 1073 (D.C. Cir., 
Spec. Div., 1990), which held that the "but for" requirement had 
been satisfied because 34[t]he Public Integrity Section of the Depart-
ment of Justice and its decision not to recommend prosecution, provides 
ample support for the conclusion that, in the investigation conduct-
ed by the Independent Counsel, Perry was being subjected to 
expenses for a duplicative investigation that he would not have been 
subjected to in the absence of the Ethics in Government Act." Id. 
at 1074 (citing In re Olson, 884 F.2d at 1420). However, the matters 
investigated in In re Olson predated the 1987 amendment to the 
Act that constricted the ability of the Attorney General to not 
recommend an independent counsel investigation. See Independent 
Counsel Reauthorization Act of 1987, Pub. L. 100-191, s 2, 101 Stat. 
1293, 1295 (1987) (amending 28 U.S.C. s 592(a) to limit the state of 
mind evidence as a basis for non-referral "unless there is clear and 
convincing evidence that the person lacked such state of mind"). In theory,
this change in the law should have resulted in more, rather than less, 
duplication of investigation by the independet counsel.

investigation with the "scope and breadth" of the subsequent 
independent counsel investigation authorized by it. But, after 
granting an award of attorneys' fees, In re Olson goes on to 
quote further a somewhat contrary passage from the legisla-
tive history that "admonished [the court] to award reimburse-
ment for attorneys' fees 'in only rare circumstances' for 
'extraordinary expenses.' " 884 F.2d at 1420 (quoting S. Rep. 
No. 97-496).

 In reality, there is duplication in almost every case, al-
though in most it is less than total. As a result, In re Olson 
is not an easy case to distinguish. But rather than address 
this tension, our subsequent cases have invoked the somewhat 
contradictory admonishments of a Senate committee report to 
consistently reject "duplication"arguments as a basis for re-
covery.3 See, e.g., In re Babbitt, 290 F.3d 386, 393-94 (D.C. 
Cir., Spec. Div., 2002) (rejecting duplication argument and 
stating that "[d]uplication by definition does not occur if the 
IC's investigation extends significantly beyond that of the 
DOJ's preliminary investigation" (citing In re Olson, 884 F.2d 
at 1420)); In re Pierce (Sanders Fee Application), 198 F.3d 
899, 904 (D.C. Cir., Spec. Div., 1999) (rejecting fee application 
because the petitioner failed to "put forward evidence that the 
IC's investigation duplicated the preliminary investigation 
conducted by the Attorney General"); In re Pierce (Olivas 
Fee Application), 178 F.3d 1350, 1354 (D.C. Cir., Spec. Div., 
1999) (stating that there can be no "serious argument" that 
duplication occurred because "the Independent Counsel's in-
vestigation ranged far beyond the preliminary investigation 
not only in depth but breadth"); In re Pierce (Kisner Fee 
Application), 178 F.3d 1356, 1360 (D.C. Cir., Spec. Div., 1999) 
(same); In re Nofziger, 939 F.2d 1397, 1404 (D.C. Cir., Spec. 
Div., 1991) (holding that only those fees resulting from a 
"substantial duplication of prior investigations" are reimburs-

__________
 3 For a discussion of the conflicting themes that have been drawn 
from the Act's legislative history and, in turn, relied upon by this 
court, see In re Babbitt, 290 F.3d 386, 395-96 & nn.1-2 (D.C. Cir., 
Spec. Div., 2002) (Cudahy, J., dissenting) (collecting and comparing 
cases that have cited S. Rep. No. 97-496 to either approve or deny 
attorneys' fees).

able under s 593(f) and distinguishing In re Olson). Whether 
this blanket approach, which leaves In re Olson in almost 
solitary preeminence, would be validated if a rigorous, case-
by-case analysis were employed is questionable.

 On the second point, that the Act hampered the Attorney 
General's preliminary investigation, and therefore created the 
conditions for a more onerous independent counsel inquiry 
than would otherwise have been required, see In re Donovan, 
877 F.2d 982, 987 (D.C. Cir., Spec. Div., 1989) (per curiam), 
there is also room for doubt. Both Independent Counsel 
Lancaster in his evaluation and the majority attempt to 
distinguish Donovan on the theory that the Attorney General 
in that case purportedly lacked the prosecutorial means to 
resolve an issue of credibility of a single witness, and this was 
the point on which the whole case turned. But it is not clear 
to me why in principle the denial of important prosecutorial 
methods should be a "but for" cause of an independent 
counsel's investigations if the prosecutorial challenge is sim-
ple (as was purportedly the case in Donovan) but not if the 
case is complicated by the testimony of "other critical wit-
nesses," as the majority says is the case here. In any event, 
when the majority agrees with the Independent Counsel "that 
if the Attorney General had had all of the standard prosecuto-
rial tools available to her, the scope, depth and thoroughness 
of her investigation would have been similar, if not identical, 
to that of the Independent Counsel, ..." it may be unwitting-
ly making an entirely different point than it seems to be 
contemplating. For the point being made by the Indepen-
dent Counsel's evaluation is that, if the Attorney General had 
all the "standard prosecutorial tools," the preliminary investi-
gation would become as onerous as the resulting independent 
counsel investigation and would be fully as expensive, al-
though by statute non-reimbursable.

 In any event, the allegations against Secretary Herman is 
suggested a type of generic wrongdoing that
is quite distinguishable from the investigation charges, for example,
against Secretary Babbitt (, in whose case I dissented from the denial of the
bulk of the fees). See In re Babbitt, 290 F.3d 386, 395 (D.C. Cir., Spec. 
Div., 2002) (Cudahy, J., concurring/dissenting). In Babbitt, the 
investigation proceeded only 
because the Attorney General could not abort it unless she 
found lack of criminal intent by clear and convincing evidence. 

See 28 U.S.C. s 592(a)(2)(b)(ii). In addition, despite the extensive 
marshaling of investigative resources, Babbitt failed to result in a 
single criminal indictment.

 In contrast, the Herman investigation was much narrower in
scope, yet it eventually resulted in the indictment of Abdul Rahman,
a foreign national, based on preliminary evidence that Rahman
transferred a large sum of money to Vanessa Weaver, a friend of 
Secretary Herman, at the same time that Weaver made donations
totaling the same amount to various political organizations. These
allegations are suggestive of the type of generic corruption that
would likely have been taken quite seriously by the Dpartment of 
Justice. The Department's evaluation of Secretary Herman's fee 
petition takes this position:

 Ms. Herman cannot plausiby argue that absent the Inde-
 pendent Counsel law the matter Rahman's campaign 
 contributions -- a matter involving allegedly unlawful 
 political donations by a foreign national with ties to a 
 high-level member of the White House staff -- would 
 not have been investigated. Nor can Ms. Herman 
 plausibly argue that Ms. Weaver's involvement in the
 matter would not have been looked into, given the alle-
 gation, ultimately reflected in the explicit terms of the 
 grand jury's indictment, that Ms. Weaver and/or her 
 companies served as the conduit for the illegal funds. 
 From an objective standpoint, it seems clear that this 
 matter, including the question of Ms.Weaver's involve-
 ment, would have been investigated even absent 
 an Independent Counsel statute.

DOJ Evaluation, at 9; cf. In re Pierce (Pierce Fee Application),
213 F.3d 713, 718 (D.C. Cir., Spec. Div., 2000) (34The convol-
uted nature of the corruption involved and the high profile 
identity of the suspects and defendants would no doubt have
resulted in a complex and lengthy investigation with or 
without an independent counsel.34 (quotations omitted)).

 Because Olson and Donovan are among the handful of 
cases that have resulted in an award of attorney's fees, they are 
relied upon in virtually every fee petition that comes before this
court. As noted in my Babbitt dissent, our approach to s 593(f) 
attorneys' fee requests has become quite rigid in recent years. See 
290 F.3d at 396 & n.4 (discussing an 34undeniable drift in our juris-
prudence34). However, based on the nature of the allegations in the
Herman investigation and the DOJ preliminary findings, there 
is really no need to distiguish Olson and Donovan, and we should
curtail what has become a tiresome and legalistic exercise in favor 
of a judgment whether the allegations are of generic or common sort,
really inviting investigation in normal course by existing prosecutors.